UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAIRINA BRIGGS, | CASE NO. C22-1646JLR |
| Plaintiff, | ORDER |
| v. | |
| SERVICE CORP INTERNATIONAL, et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court are: (1) Plaintiff Tairina Briggs's motion to remand (MTR (Dkt. # 12); MTR Reply (Dkt. # 27)); and (2) Ms. Briggs's motion to amend her complaint (MTA (Dkt. # 15); MTA Reply (Dkt. # 28)). Defendants Service Corporation International ("SCI") and John Kevin Varner (collectively, "Defendants") oppose the motion to remand but have not filed an opposition to the motion to amend. (MTR Resp. (Dkt. # 24); *see generally* Dkt.) The court has considered the parties' submissions, the

ORDER - 1

balance of the record, and the applicable law. Being fully advised,[1] the court DENIES Ms. Briggs's motion to remand and GRANTS Ms. Briggs's motion to amend.

## II. BACKGROUND

From October 26, 2020, until May 22, 2022, Ms. Briggs worked as a dispatcher for SCI. (FAC (Dkt. # 1-1) ¶ 5.1.) Mr. Varner was her manager; she also had several supervisors who are not named in this lawsuit. (*Id.*) Ms. Briggs alleges that throughout her employment, Mr. Varner and other supervisors denied her lunch breaks and rest breaks; "verbally assaulted" her and other employees; made racially offensive comments; and irresponsibly handled COVID-19 cases in the office. (*Id.* ¶¶ 5.2-5.21.) Ms. Briggs further alleges she resigned from her position with SCI due to this treatment. (*Id.* ¶ 5.22.)

On October 3, 2022, Ms. Briggs initiated this action against Defendants in King County Superior Court. (*See* Verification of State Court Records (Dkt. # 9), Ex. A.) She amended her complaint on October 25, 2022. (*See* FAC.) In her amended complaint, Ms. Briggs alleges claims under Washington state law for a hostile work environment, disparate treatment, retaliation, negligent and intentional infliction of emotional distress, and constructive discharge. (FAC ¶¶ 5.23-5.27.) Ms. Briggs seeks special damages, general damages, punitive damages, attorneys' fees, lost wages, back pay, front pay, and benefits. (*See id.* at 16-17 (prayer for relief).)

On November 17, 2022, Defendants removed the case to this court on grounds of diversity jurisdiction. (*See generally* NOR (Dkt. # 1).) Ms. Briggs then filed these

---

[1] Neither party requests oral argument (*see* Mot., Resp.), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

motions to remand this case back to King County Superior Court for lack of subject matter jurisdiction (*see generally* MTR) and to amend her complaint (*see generally* MTA).

### III.   ANALYSIS

The court begins by discussing Ms. Briggs's motion to remand before turning to Ms. Briggs's motion to amend.

**A.   Motion to Remand**

Ms. Briggs moves to remand this case back to King County Superior Court, arguing that removal was improper because the requirements for diversity jurisdiction have not been met. (*See generally* MTR.) First, Ms. Briggs argues Defendants have failed to carry their burden to show the amount in controversy exceeds $75,000. (*Id.* at 4.) Second, Ms. Briggs argues that the parties lack diversity of citizenship. (*Id.* at 5.) The court sets forth the relevant legal standard for evaluating motions to remand before turning to its analysis of Ms. Briggs's motion.

   1. Legal Standard for Motions to Remand

A civil action brought in a state court may be removed to a federal district court if the federal district court could have exercised original jurisdiction over the action. *See* 28 U.S.C. § 1441. Federal diversity jurisdiction exists when a claim arises between citizens of different states and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332. Federal courts strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance. *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles,*

*Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing defendant faces a "strong presumption" against removal and bears the burden of establishing, by a preponderance of the evidence, that removal was proper. *Gaus*, 980 F.2d at 567; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

      a. *Amount in Controversy*

When the plaintiff's requested damages are unclear from the face of the complaint, the defendant bears the burden of proving, by a preponderance of evidence, that the amount in controversy exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (affirming the application of a preponderance of the evidence standard). Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds the required amount. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). If the amount in controversy is not "facially apparent" from the complaint, "the court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

"The amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). Such relief may include "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Id.* at 416 (quoting *Gonzales v. CarMax Auto*

*Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)); *see also J. Bells LLC v. Sentinel Ins. Co. Ltd.*, No. C20-5820BJR, 2020 WL 5905199, at *2 (W.D. Wash. Oct. 6, 2020) (stating that the court "looks not only to the amount of damages in dispute, but also to attorney's fees, costs, and statutory treble damages").  Conclusory allegations as to the amount in controversy, however, are insufficient. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also, e.g.*, *Gaus*, 980 F.2d at 567 (holding that a bald recitation that damages exceeded the jurisdictional amount was insufficient to establish the amount in controversy where the defendant did not set forth facts supporting that assertion).

        A defendant can use a plaintiff's settlement demand to establish the amount in controversy "if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (rejecting the argument that Federal Rule of Evidence 408 prohibits the use of settlement offers in determining the amount in controversy); *Egal v. Geico Gen. Ins. Co.*, No. C14 1964RSM, 2015 WL 1632950, at *3-4 (W.D. Wash. Apr. 13, 2015) (considering plaintiff's demand letter when determining that the amount in controversy was satisfied); *Flores v. Safeway, Inc.*, No. C19-0825JCC, 2019 WL 4849488, at *3 (W.D. Wash. Oct. 1, 2019) ("To establish the amount in controversy, a defendant may point to many different types of evidence," and "[a] particularly powerful form of evidence is the plaintiff's own statements about the damages they seek.").  When a plaintiff disavows a settlement offer, however, that offer no longer serves as evidence of the amount in controversy. *Cohn*, 281 F.3d at 840 (explaining that the plaintiff "could have argued that the demand was inflated and not an

honest assessment of damages," but he did not "disavow" the demand); *Aguilar v. Wells Fargo Bank, N.A.*, No. ED-CV-15-01833-AB (SPx), 2015 WL 6755199, at *4 (C.D. Cal. Nov. 4, 2015) ("Because Plaintiff has expressly denied that her settlement offer accurately assesses the value of her claims, the offer does not constitute valid evidence of the amount in controversy.").

Here, Ms. Briggs asserts that Defendants have failed to establish that the amount in controversy exceeds $75,000. (MTR at 4.) Specifically, she argues that "Defendant has improperly imputed theoretical damages exceeding the amount in controversy"; that "most employment cases that go to trial are rejected by the jury"; that "[P]laintiff has a minimal wage loss claim at the time of this motion"; and that "[a]ttorney's fees are minimal at the time of this motion." (*See* MTR at 3; MTR Reply at 1-2.) These arguments, however, fail to acknowledge that the amount in controversy is not based on the probability of success or the current costs at this stage of the case; instead, it is calculated based on all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails. *See Chavez*, 888 F.3d at 418. Applying this standard, the court concludes that Defendants have met their burden to show that the amount in controversy exceeds $75,000.

The court agrees with Defendants that the settlement discussions between Ms. Briggs and Defendants reflect a reasonable estimate of the value of her claims sufficient to establish an amount in controversy that exceeds $75,000. (MTR Resp. at 6); *see Cohn*, 281 F.3d at 840. During a phone call between Defendants' counsel, Priya Vivian, and Ms. Briggs's counsel, Thaddeus P. Martin, Mr. Martin conveyed a settlement demand of

$250,000, along with a detailed explanation as to how he reached that number. (Vivian Decl. (Dkt. # 25) ¶¶ 3-4 (stating Mr. Martin explained that this valuation was based on the number of years that Ms. Briggs worked for the company, the type of discrimination she experienced, the medical attention she sought, the nature of the discriminatory comments, and his experience with settlements in similar cases); *see also id.* ¶ 4 (stating that Mr. Martin "confirmed that he 'definitely' thought the case should settle in the six figures").) Ms. Briggs counters that the $250,000 demand was mere "puffing" of the case value and cannot be taken as evidence of the amount in controversy in this case. (MTR at 5.) She points out that when Ms. Vivian emailed Mr. Martin to confirm his demand of $250,000, Mr. Martin replied that he had "never made an official offer to settle" and "thought [they] were talking generally about whether this case could settle at a reasonable number." (*Id.* (citing Martin MTR Decl. (Dkt. # 13) ¶ 6, Ex. 6).) At no point during or after that discussion, however, did Mr. Martin disavow that $250,000 was a reasonable valuation of Ms. Briggs's claims, nor has he contradicted Ms. Vivian's description of their discussion. (*See* Vivian Decl. ¶¶ 3-4; *see generally* Martin MTR Decl.); *see also Cohn*, 281 F.3d at 840 (holding that a settlement demand was sufficient to satisfy the amount in controversy where plaintiff made no attempt to disavow the letter or offer contrary evidence). To the contrary, Mr. Martin described his $250,000 valuation as a "reasonable number." (Martin MTR Decl. ¶ 6, Ex. 6.) This statement puts his case valuation in line with *Cohn*'s requirement that a settlement demand be reasonable. *See Cohn*, 281 F.3d at 840. Even if Mr. Martin did not intend the discussions to serve as an "official" demand, he identifies no legal authority to support a

ORDER - 7

distinction between "official" and "unofficial" settlement demands in this context. (*See generally* MTR; Reply.)  The court concludes that the settlement demand of $250,000, its accompanying justification, and Mr. Martin's description that the demand was "reasonable" are sufficient evidence to establish that the amount in controversy has been met. *See Babcock v. ING Life Ins. & Annuity Co.*, No. 12-CV-5093-TOR, 2012 WL 3862031, at *3 (E.D. Wash. Sept. 5, 2012) (holding that the settlement letter provided by the defendant was sufficient to prove that it was more likely than not that the amount in controversy exceeded $75,000).

Ms. Briggs also argues that the amount in controversy is not satisfied because her wage loss damages, if any, are minimal. (*See* MTR at 3; MTR Reply at 1.)  First, Ms. Briggs argues that Defendants' estimate of $68,160 in lost wages (*see* MTR Resp. at 8) fails to account for the fact that she mitigated her wage losses by obtaining comparable employment. (MTR Reply at 2; Briggs MTR Decl. (Dkt. # 14) ¶ 2 (stating that Ms. Briggs started a job with comparable wages about a month after she resigned).)  Mitigation of wages, however, is an affirmative defense that is not considered when determining the amount in controversy. *See Eskridge v. Nucor Steel Seattle, Inc.*, No. C20-1393MJP, 2020 WL 7694049, at *2 (W.D. Wash. Dec. 28, 2020) (explaining that the possibility that plaintiff's new employment would reduce his damages is immaterial because defenses are not considered in determining the amount in controversy (citing *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010))); *see also Mendoza v. QVC Inc.*, No. 5:20-CV-01595-ODW (KKx), 2021 WL 633023, at *3 (C.D. Cal. Feb. 18, 2021) (holding that because mitigation of damages is

an affirmative defense, the amount in controversy was not reduced when the plaintiff obtained subsequent comparable employment).

Second, Ms. Briggs asserts in her reply that she "is not making a wage loss claim." (MTR Reply at 1.) The court, however, evaluates the propriety of removal based on the operative complaint at the time of removal. Post-removal declarations or other pleadings that reduce the amount recoverable "do not oust a court's jurisdiction once it has attached." *Burke Fam. Living Tr. v. Metro. Life Ins. Co.*, No. C09-5388FDB, 2009 WL 2947196, at *3 (W.D. Wash. Sept. 11, 2009).

To conclude, the court finds that Defendants have satisfied their burden of establishing that it is "more likely than not" that the amount in controversy exceeds $75,000.

      b.  <u>Diversity of Citizenship</u>

"Subject matter jurisdiction based upon diversity of citizenship requires that no defendant have the same citizenship as any plaintiff." *Tosco Co. v. Communities for a Better Env't.*, 236 F.3d 495, 499 (9th Cir. 2000). Corporations have dual citizenship: they are citizens of both the state of incorporation and the state where their principal place of business is located. *Id.* at 500. For purposes of diversity jurisdiction, individuals are deemed citizens of the state of their domicile. *Kanter v. Warner Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). One's domicile is one's "permanent home," which is "where [one] resides with the intention to remain or to which [one] intends to return." *Id.* "At minimum, a person's residence constitutes some evidence of domicile." *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (emphasis in original). "[A]

party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Id.* A defendant may satisfy its burden to show diversity of citizenship using a declaration, but the claim for domicile should be "evaluated in terms of objective facts" and "statements of intent are entitled to little weight when in conflict with facts." *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

It is undisputed that Ms. Briggs is a citizen of Washington (FAC ¶ 3.1, 4.1) and that SCI is a citizen of Texas because it is incorporated in Texas with its principal place of business in Texas. (NOR ¶ 3; FAC ¶ 4.2). The parties, however, contest the citizenship of Mr. Varner: Defendants claim Mr. Varner is a citizen of Florida, whereas Ms. Briggs claims Mr. Varner is a citizen of Washington. (*See* MTR at 2; NOR ¶ 3; Varner Decl. (Dkt. # 26) ¶¶ 2, 4, 5.)

The court concludes that Mr. Varner is domiciled in Florida for purposes of diversity jurisdiction. According to his declaration, Mr. Varner previously lived in Lake Forest Park, Washington with his husband. (*Id.* ¶ 2.) On August 27, 2022, Mr. Varner and his husband moved to Valrico, Florida, where Mr. Varner had recently accepted a new job. (*Id.*) Mr. Varner's lease for his Washington property ended on August 31, 2022. (*Id.* ¶ 6.) Mr. Varner and his husband are currently renting a home in Valrico, Florida and have set up mail forwarding from their former Lake Forest Park address to their Valrico address. (*Id.* ¶ 4.) The couple has also gone under contract to purchase a home in Bartow, Florida. (*Id.* ¶ 4, Ex. 1.) Additionally, Mr. Varner has obtained a

Florida driver's license and registered to vote in Florida. (*Id.* ¶ 5, Ex. 2.) Mr. Varner no longer maintains a home in Washington, has not visited Washington since he moved to Florida, and has no plans to move back to Washington. (*Id.* ¶ 6.) These facts are sufficient to establish that Mr. Varner is domiciled in Florida. *See, e.g.*, *Pierson v. Miniat*, No. C21-1317SKV, 2022 WL 43520, at *2 (W.D. Wash. Jan. 5, 2022) (holding that evidence of the defendant's Washington employment, places of residence, real estate purchase, payment of utilities, driver's license, vehicle and voter registration, and payment of taxes were sufficient to show that the defendant was a citizen of Washington).

Ms. Briggs's arguments in opposition do not alter this conclusion. Ms. Briggs claims Mr. Varner is domiciled in Washington because he "lived in Washington State as recently as this summer and still maintains a home here" and that "there is no evidence he has established residency in Florida." (MTR at 2, MTR Reply at 4.) To support this assertion, Ms. Briggs argues that the court should consider Mr. Varner's last-known Washington address in Lake Forest Park as evidence of his citizenship in Washington. (MTR at 2; MTR Reply at 2.) When Ms. Briggs attempted to serve Mr. Varner at this address, however, the mail was automatically forwarded to his new Florida address, which undermines Ms. Briggs's claim that Mr. Varner has maintained a permanent residence in Washington in which he intends to remain. (Vivian Decl. ¶ 2, Ex. 1; Martin MTR Decl. ¶ 3, Ex. 3.)

Ms. Briggs also relies on a checklist derived from Florida's Uniform Child Custody and Jurisdictional Act ("UCCJA"), Fla. Stat. § 61.1308(1)(a) to support her

contention that Mr. Varner is not a Florida resident. (MTR at 2.) This argument is misplaced. The UCCJA, which has since been repealed and replaced with a different statute, is relevant only to child custody matters, not citizenship for purposes of federal diversity jurisdiction. *See Arjona v. Torres*, 941 So. 2d 451, 454 (Fla. Dist. Ct. App. 2006) (explaining the history of the UCCJA).

In sum, under the applicable legal standards, Defendants have met their burden to establish that the parties are diverse because no Defendant is of the same citizenship as Ms. Briggs. Defendants have also met their burden to show that the amount in controversy exceeds $75,000. Accordingly, the court denies Ms. Briggs's motion to remand for lack of subject matter jurisdiction.[2]

**B.     Motion to Amend Complaint**

Ms. Briggs also moves this court for leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). (*See generally* MTA; Prop. SAC.) Under Rule 15(a)(2), "[t]he court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts consider five factors when assessing a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended its pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a)

---

[2] Because the court denies Ms. Briggs's motion to remand, it also denies her request for attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). (*See* MTR at 6-7.)

in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). In general, "if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. LCR 7(b)(2).

Ms. Briggs seeks leave to make two changes to her complaint. First, Ms. Briggs seeks to replace Defendant SCI with Uniservice Corporation, which she alleges is her actual employer. (MTA at 1.)[3] Second, she seeks to change the name of Defendant Jane Doe to "John Doe" to correctly reflect the gender of Mr. Varner's husband. (*Id.*)

In light of the presumption in favor of granting leave to amend, and taking Defendants' failure to oppose Ms. Briggs's motion as an admission that the motion has merit, the court grants Ms. Briggs's motion to amend. (*See generally* Dkt.)

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Ms. Briggs's motion to remand (Dkt. # 12) and GRANTS Ms. Briggs's motion to amend (Dkt. # 15). Ms. Briggs shall file her second amended complaint on the docket by no later than **February 9, 2023**.

Dated this 27th day of January, 2023.

JAMES L. ROBART
United States District Judge

---

[3] The court's granting of the motion to amend will not destroy diversity. Uniservice Corporation, the proposed replacement Defendant, is incorporated in Oregon with its principal place of business in Texas. (NOR at 1 n.1.)