UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAIRINA BRIGGS,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE CORP INTERNATIONAL, et al.,<br><br>Defendants. | CASE NO. C22-1646JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendants Uniservice Corporation ("Uniservice"), John Kevin Varner, and John Doe Varner's (collectively, "Defendants") motion to compel arbitration and dismiss this action. (Mot. (Dkt. # 19); Reply (Dkt. # 32).) Plaintiff Tairina Briggs opposes Defendants' motion. (Resp. (Dkt. # 29).) The court has considered the parties'

//

//

submissions, the balance of the record, and the applicable law. Being fully advised,[1] the court GRANTS Defendants' motion to compel arbitration, DENIES Defendants' motion to dismiss, and STAYS this action.

## II. BACKGROUND

Ms. Briggs began working as a Dispatcher for Uniservice in the fall of 2020. (*See* Patel Decl. (Dkt. # 21) ¶ 2; SAC (Dkt. # 36) ¶ 5.1.) On October 29, 2020, Uniservice extended a conditional offer of employment to Ms. Briggs, contingent on a background check and drug screen. (Briggs Decl. (Dkt. # 31) ¶ 8, Ex. 1 ("Offer Letter").) Ms. Briggs completed new employee orientation and on-boarding on November 12, 2020. (Briggs Decl. ¶ 3; Patel Decl. ¶ 2.) Ms. Briggs argues her employment began when she received the offer letter (Resp. at 10 ("Arguably, plaintiff became an employee of defendant when she was offered employment on October 29, 2020.")), while Defendants assert Ms. Briggs's employment began on November 12, 2020 (*see, e.g.*, Patel Decl. ¶ 2).

As part of the orientation, Uniservice required Ms. Briggs to sign onto Workday, a cloud-based system used to communicate with employees and maintain human resources files, to acknowledge several documents detailing her terms of hire. (*Id.* ¶¶ 5, 8.) These documents included descriptions of applicable wage theft ordinances, an associate handbook, a 401(k) acknowledgment, and the alleged arbitration agreement at issue, titled "Mutual Resolution Process Agreement" ("MRPA"). (*Id.* ¶ 5, Ex. 1 ("MRPA"); *id.* ¶ 7, Ex. 3 ("Workday Records").) Workday presented the MRPA to employees by

[1] Neither party requests oral argument (*see* Mot., Resp.), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

displaying a screen that included a hyperlink reading "Mutual Resolution Process Agreement (English)"; a "signature statement" stating "[b]y selecting the 'I Agree,' button, you acknowledge and agree to the Mutual Resolution Agreement. You agree your electronic signature is the legal equivalent of your manual signature"; and an "I Agree" button. (Pellegrin Supp. Decl. (Dkt. # 34) ¶ 5, Ex. 1.) According to Defendants, if an employee clicked on the hyperlink text, they would be led directly to the MRPA. (Patel Decl. ¶¶ 5-6; Pellegrin Supp. Decl. ¶¶ 6, 7 (screenshot of Workday's display after an employee clicks the "Mutual Resolution Process Agreement" hyperlink).)

During orientation on November 12, 2020, Ms. Briggs logged into Workday for at least one hour in total. (Pellegrin Decl. (Dkt. # 22) ¶ 7 (screenshot showing Ms. Briggs's Workday session start and stop times); *id.* ¶ 8 (screenshot of Workday log showing Ms. Briggs's activity on Workday).) Ms. Briggs clicked the "I Agree" button under the "Mutual Resolution Process Agreement" hyperlink. (Briggs Decl. ¶ 9, Ex. 2 (Ms. Briggs's copy of Workday Records); Workday Records at 21[2].) Ms. Briggs and Uniservice imply, but do not state directly, that Ms. Briggs did not click the MRPA hyperlink, and thus did not read the document. (*See* Pellegrin Supp. Decl. ¶ 7; *see also* Briggs Decl. ¶ 2.)

Workday is the only method that Uniservice uses to deliver onboarding documents to employees; Uniservice does not otherwise mail, email, or provide hard copies of the documents to its employees. (*See generally* Patel Decl.; *see* Briggs Decl. ¶ 2 (stating Ms.

[2] The court cites to the page number in the CM/ECF header when referring to the Workday Records.

Briggs did not receive a copy of the MRPA via mail, email, or hardcopy).) According to Defendants, Workday does, however, allow employees to read, print, and download agreements such as the MRPA at any time, including during the onboarding process (Patel Decl. ¶ 5.)

The MRPA is an eight-page document with a standard font size, numerous section headers, and certain phrases in bold text. (*See generally* MRPA.) The MRPA begins with a section titled "Coverage" that reads, in relevant part:

> **Associates, Entities and the Company (the "Parties") agree to the terms of this Program. The Associate indicates his or her agreement to this Program and its terms and conditions by beginning employment with the Company on the date of Associate's hire (the "Effective Date"). By submitting this Program to the Associate, the Company and the Entities agree to this Program and its terms and conditions.**
>
> . . .
>
> Associates must bring any Covered Dispute (as defined below) they have in arbitration, rather than in court.
>
> . . .
>
> The Parties agree that the Federal Arbitration Act (9 U.S.C., § 1-16) governs the interpretation, enforcement, and all proceedings pursuant to this Agreement and the Associate's relationship with the Company and/or the Entities.

(MRPA Section I.B (emphasis in original).) In the "Arbitration Rules" section, the MRPA provides:

> Subject to the terms of this Agreement, the Parties agree that the rules governing the arbitration will be the then-current Employment Arbitration Rules and Procedure of JAMS, which are currently available at http://www.jamsadr.com/rules-employment-arbitration.
>
> . . .
>
> Any dispute as to arbitrability, including disputes about this Program's enforceability, unconscionability, validity and applicability to a particular Covered Dispute must be resolved by the arbitrator in arbitration and not by the court.
>
> . . .

> In deciding a Covered Dispute, the arbitrator will apply the substantive law, including burdens of proof of the court in the venue of the arbitration. The arbitrator may grant any relief a court might grant, but will have no power to grant any other relief.

(MRPA Section VII.) "Covered Disputes" under the MRPA include claims for wrongful discharge, harassment, and violations of state and federal employment laws. (MRPA Section IV.)

After Ms. Briggs completed her onboarding tasks on November 12, 2020, she continued to work for Uniservice until May 22, 2022. (SAC ¶ 5.2; Patel Decl. ¶ 2; Workday Records at 21.) Ms. Briggs alleges that throughout her employment, Mr. Varner and other supervisors denied her lunch breaks and rest breaks; "verbally assaulted" her and other employees; made racially offensive comments; and irresponsibly handled COVID-19 cases in the office. (SAC ¶¶ 5.2-5.21.) Ms. Briggs further alleges she resigned from her position with Uniservice due to this treatment. (*Id.* ¶ 5.22.)

Ms. Briggs filed this lawsuit in King County Superior Court on October 3, 2022. (*See* Verification of State Court Records (Dkt. # 9), ¶ 8, Ex. A.) Ms. Briggs asserts claims under Washington law for a hostile work environment, disparate treatment, retaliation, negligent and intentional infliction of emotional distress, and constructive discharge. (SAC ¶¶ 5.23-5.27.) Ms. Briggs seeks special damages, general damages, punitive damages, attorneys' fees, lost wages, back pay, front pay, and benefits. (*Id.* at 16.)

On or around November 11, 2022, Defendants' counsel, Priya Vivian, contacted Ms. Briggs's counsel, Thad Martin, and provided him a copy of the MRPA. (Vivian

Decl. ¶ 2.) Through counsel, Defendants asked Ms. Briggs if she would agree to dismiss this lawsuit and refile it with JAMS on three separate occasions, but she declined to agree to arbitration. (*Id.*)

On November 17, 2022, Defendants removed the case to this court. (NOR (Dkt. # 1).) The court subsequently denied Ms. Briggs's motion to remand this case back to King County Superior Court. (1/27/23 Order (Dkt. # 35); *see* MTR (Dkt. # 12).) With leave of the court, Ms. Briggs filed a second amended complaint on February 2, 2023, replacing one Defendant and correcting the name of another. (SAC; *see also* 1/27/23 Order; MTA (Dkt. # 15).)

Defendants now move to compel arbitration and dismiss this action pursuant to Section 2 of the Federal Arbitration Act ("FAA"), Federal Rule of Civil Procedure 12(b)(3), and the terms and conditions of Ms. Briggs's employment as defined in the MRPA. (*See generally* Mot.)

## III. ANALYSIS

The court sets forth the legal standard for evaluating a motion to compel arbitration before turning to Defendants' motion. The court then considers Defendants' motion to dismiss.

### A. Legal Standard for Motions to Compel Arbitration

The FAA, 9 U.S.C. § 2, governs arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores*, *Inc. v. Adams*, 532 U.S. 105, 119 (2001). The FAA "reflect[s] both a liberal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*,

563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and must enforce them according to their terms." *Id.* (internal quotation marks and citations omitted); *see also Rent-A-Ctr.*, *W.*, *Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable" unless invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017). Arbitration agreements may not, however, be invalidated by defenses that apply only in arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Poublon*, 846 F.3d at 1260. "The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Zuver v. Airtouch Commc'ns*, *Inc.*, 103 P.3d 753, 759 (Wash. 2004).

A district court's authority to compel arbitration arises under Section 4 of the FAA. *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011); 9 U.S.C. § 4. In deciding whether to compel arbitration under the FAA, a court's inquiry is generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). If both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide [for it].'"

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Concepcion*, 475 U.S. at 649). If an agreement contains a delegation provision, the court's role is limited to analyzing whether: (1) a valid agreement to arbitrate exists and (2) the agreement contains a valid delegation provision. *Id.* at 1133. If both preconditions are met, the arbitrator must resolve all further issues regarding arbitrability, including whether the argument applies to the dispute at issue. *Id.*[3]

**B. Defendants' Motion to Compel Arbitration**

Defendants argue that the MRPA constitutes a valid agreement to arbitrate and that it delegates the issue of arbitrability to the arbitrator. (*See* Mot. at 5-12.) Ms. Briggs argues there is no agreement to arbitrate, contending the agreement is not supported by mutual assent or consideration. (*See* Resp. at 4-11.) The court analyzes each argument in turn.

<u>1. Whether an Agreement to Arbitrate Exists</u>

The party seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017). This burden is substantial, and the court must give the party denying the existence of an agreement to arbitrate the benefit of all reasonable doubts and inferences. *Alarcon v. Vital Recovery*

[3] *Brennan* involved an arbitration agreement in an employment contract between sophisticated parties. 796 F.3d at 1131. Courts have since applied *Brennan*'s holding to disputes involving non-sophisticated parties. *See, e.g.*, *J.A. through Allen v. Microsoft Corp.*, C20-0640RSM-MAT, 2021 WL 1723454, at *8 (W.D. Wash. Apr. 2, 2021) (applying *Brennan* to a dispute between consumers who purchased Microsoft products and Microsoft Corporation).

*Servs.*, *Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). In this inquiry, the court applies ordinary state law principles governing the formation of contracts. *First Options of Chicago*, *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Norcia*, 845 F.3d at 1283.

Here, the parties agree that Washington law governs the issue of contract formation. (*See* Mot. at 9-10; Resp. at 4.) The parties disagree, however, about whether Ms. Briggs manifested her assent to be bound by the MRPA and whether the MRPA is supported by valid consideration, two essential elements of contract formation. (*See* Resp. at 4-11; Reply at 2-6.)

*a. The MRPA is Supported by Mutual Assent*

A valid contract requires parties to objectively manifest their mutual assent to its essential terms, generally in the form of an offer and an acceptance. *Cruz v. Chavez*, 347 P.3d 912, 916 (Wash. App. 2015); *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993). Mutual assent is evident from outward manifestations and circumstances surrounding the transaction. *Burnett v. Pagliacci Pizza*, *Inc.*, 470 P.3d 486, 492 (Wash. 2020). The "offer" element of mutual assent is met by a promise to render a stated performance in exchange for a return promise. *Yakima Cnty*, 858 P.2d at 255. Acceptance may be manifested expressly, such as by checking a box or clicking on a button, or impliedly, through performance or other conduct. *See Okelo v. Antioch Univ.*, 601 F. Supp. 3d 894, 897-98 (W.D. Wash. 2022) (finding that arbitration agreement was valid where offer letter provided link to access full text of arbitration agreement and other policies, and employee accepted when he signed and

returned offer letter); *see also Am. Express Centurion Bank v. Stratman*, 292 P.3d 128, 132 (Wash. App. 2012) (noting that acceptance of an offer may be made through conduct).

Mutual assent to the terms of an employment relationship exists if the employee had "a reasonable opportunity to understand the terms" contained in the agreement. *Burnett*, 470 P.3d at 492. "Washington does not allow parties to shirk contract obligations if they had actual or constructive notice of the provisions." *Id.* Courts have consistently found hyperlinks to the express terms of an agreement in proximity to electronic acknowledgments to be sufficient notice of the terms. *Wiseley v. Amazon*, 709 F. App'x 862, 864 (9th Cir. 2017) (citing *Zuver*, 103 P.3d at 761) (concluding, under Washington law, that action button, next to a hyperlinked consumer agreement, was "in sufficient proximity to give" plaintiff "a reasonable opportunity to understand that he would be bound by additional terms"); *Reed v. Scientific Games Corp.*, No. C18-0565RSL, 2021 WL 2473930, at *3 (W.D. Wash. Jun. 17, 2021) (noting mutual assent when consumer clicked "accept" to online terms of service, which included an arbitration agreement and denying arbitration for unrelated reasons).

Defendants argue that the MRPA was supported by express mutual assent, or in the alternative, implied assent. (Reply at 2-4.) For express assent, Defendants argue that the MRPA constituted Uniservice's offer and Ms. Briggs's acknowledgment of the MRPA constituted her acceptance. (*See* Reply at 2-6.) The court agrees with Defendants. Ms. Briggs clicked the "I agree" button in Workday, which appeared in close proximity to text stating: "By selecting the 'I Agree,' button, you acknowledge and

agree to the Mutual Resolution Agreement. You agree your electronic signature is the legal equivalent of your manual signature." (Workday Records at 21; *see also* Briggs Decl. ¶ 9, Ex. 2.) Thus, by clicking the "I agree" button, Ms. Briggs expressly acknowledged and accepted the MRPA. *See Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket*, *Inc.*, 640 P.2d 1051, 1054 (Wash. 1982) (holding that a party's signature on the contract is objective evidence of the party's intent to be bound by the contract). Furthermore, the "I agree" button was in close proximity to the hyperlinked agreement, which she had the opportunity to review. (Pellegrin Supp. Decl. ¶ 5, Ex. 1; *see generally* Resp.; Reply at 4.) Thus, Uniservice provided Ms. Briggs with reasonable notice of the terms of the contract. *Wiseley*, 709 F. App'x at 862.

Ms. Briggs responds that the MRPA lacked mutual assent because the acknowledgment did not use the word "arbitration" and because she was unaware that her acknowledgment would commit her to arbitration. (Resp. at 3, 5, 6.) Her arguments are without merit. "Where a party has signed a contract without reading it, that party cannot successfully argue that mutual assent was lacking as long as the party was not deprived of the opportunity to read the contract, the contract was plain and unambiguous, the party was capable of understanding the contract, and no fraud, deceit, or coercion occurred." *Yakima Cnty.*, 858 P.2d at 255; *see also Signavong v. Volt Mgmt. Corp.*, No. C07-515JLR, 2007 WL 1813845, at *3 (W.D. Wash. Jun. 21, 2007) (noting "one who accepts a written contract is conclusively presumed to know its contents"); *Tjart v. Smith Barney*, *Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001) (explaining that "ignorance of the

contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it”).

Ms. Briggs also argues that the language of the MRPA was not plain or was somehow ambiguous. (Resp. at 6 (citing *Burnett*, 470 P.3d at 492).) To this point, Ms. Briggs relies on *Burnett v. Pagliacci Pizza*, *Inc.*, in which the Washington Supreme Court held that an employee did not manifest assent to a mandatory arbitration policy by signing an Employee Relationship Agreement (“ERA”) that incorporated the terms of a separate employee handbook containing the mandatory arbitration policy. 470 P.3d at 489. But the *Burnett* court’s decision hinged on two facts not in evidence here: first, that the ERA did not mention the arbitration policy at all; and second, that the company did not give the employee an opportunity to review the handbook before signing the ERA but instead told the employee to review the handbook later, on his own time. *Burnett*, 470 P.3d at 489, 492-93. Ms. Briggs, by contrast, was on notice of the terms of the agreement because Defendants directly referred to the MRPA above the acknowledgment button that Ms. Briggs clicked, provided a link to the MRPA, and placed no time constraint on Ms. Briggs’s review of the MRPA before she accepted it. (*See* Pellegrin Supp. Decl. ¶ 5, Ex. 1; *id*. ¶ 6; Patel Decl. ¶ 5.)

Ms. Briggs’s reliance on *Nelson v. Cyprus Bagdad Copper Corp*. is also misplaced. (Resp. at 7 (citing *Nelson v. Cyprus Bagdad Copper Corp*., 119 F.3d 756 (9th Cir. 1997).) The *Nelson* court held that an employee’s acknowledgment that he had merely received an employee handbook did not constitute his assent to be bound by the handbook’s terms. 119 F.3d at 761. Here, the operative text read, “you acknowledge and

agree to the Mutual Resolution Agreement." (Pellegrin Supp. Decl. ¶ 5, Ex. 1; Workday Records at 21.) Unlike the plaintiff in *Nelson*, Ms. Briggs acknowledged her agreement to the MRPA itself, and not merely her receipt thereof.[4]

Accordingly, the court holds that the MRPA is supported by mutual assent.[5]

*b. The MRPA is Supported by Adequate Consideration*

In addition to mutual assent, contracts must be supported by adequate consideration. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). It is well established that arbitration agreements signed at the beginning of employment, such as non-competition agreements, arbitration clauses, and confidentiality provisions, are supported by consideration. *E.E.O.C. v. Fry's Electronics*, *Inc.*, Case No. C10-1562RSL, 2011 WL 666328, at *1 (W.D. Wash. Feb. 14, 2011); *see*, *e.g.*, *Sellman v. Boehringer Ingelheim Pharm. Inc.*, Case No. C21-1105JCC, 2021 WLC 4989448, at *3 (W.D. Wash. Oct. 27, 2021) (finding adequate consideration where employer promised to let plaintiffs begin employment in exchange for, among other things, their promise to arbitrate covered disputes).

---

[4] To the extent Ms. Briggs asserts that *Nelson* or *Burnett* require an acknowledgment to use the magic word "arbitration," she misconstrues both cases. *See, e.g., Hill v. Builder Servs. Grp., Inc.*, No. C20-1478JCC, 2021 WL 4026315, at *3 (W.D. Wash. Sept. 3, 2021) (holding that nothing in *Burnett* requires an acknowledgment to use the word "arbitration" specifically and finding a specific reference to a dispute resolution policy along with a hyperlink to that policy sufficient).

[5] Although Defendants also argue, in the alternative, that Ms. Briggs impliedly assented to the MRPA, the court need not address this argument because it concludes that Ms. Briggs expressly manifested her assent.

Defendants argue that because Ms. Briggs signed the MRPA during orientation—at the commencement of her employment—the agreement is supported by adequate consideration. (Reply at 5-6 (first citing *Fry's Electronics*, *Inc.*, 2011 WL 666328, at *1; and then citing *Sellman*, 2021 WL 4989448, at *3).) Ms. Briggs counters that she received no consideration for any arbitration agreement because continued employment is not sufficient consideration for existing at-will employees in the absence of a "specific and credible threat of discharge." (Resp. at 3, 10 (citing *Labriola v. Pollard Grp.*, 100 P.3d 791, 796 (Wash. 2004)).)

Ms. Briggs's argument hinges on her contention that she was an existing at-will employee when Uniservice presented her with the MRPA, several weeks after she received the Offer Letter. (Resp. at 9.) The court concludes that Ms. Briggs's argument that her employment began when Uniservice extended the conditional employment offer is without merit: Ms. Briggs's Offer Letter indicates her employment remained contingent on additional screenings (*see* Offer Letter), she does not argue that she performed any work for Uniservice prior to completing orientation (*see generally* Resp.; Briggs Decl.), and Defendants' records show that Ms. Briggs acknowledged the MRPA on November 12, 2020, her first day working for Uniservice (*see* Pellegrin Decl. ¶ 7). Accordingly, because Ms. Briggs acknowledged the MRPA during on-boarding as a new employee, and not during a later time as an existing employee, the agreement to arbitrate was supported by consideration. *See Fry's Electronics*, *Inc.*, 2011 WL 666328, at *1.

In showing both mutual assent and adequate consideration, Defendants have met their burden in establishing the existence of an agreement to arbitrate. Now that the court

has determined that a valid arbitration agreement exists, the next issue is whether the parties have "clearly and unmistakably" delegated questions regarding arbitrability to the arbitrator.

2. Whether the Parties Have Delegated Questions of Arbitrability to the Arbitrator

Whether the court or an arbitrator should resolve a dispute as to arbitrability depends upon whether the parties agreed to delegate that power to the arbitrator. *Brennan*, 796 F.3d at 1125. Unless the parties "clearly and unmistakably" delegate that power to an arbitrator, arbitrability is for the court, not the arbitrator, to decide. *First Options*, 514 U.S. at 944; *Concepcion*, 475 U.S. at 649. Clear and unmistakable evidence of an agreement to arbitrate may be shown through an express agreement to do so, such as by using a delegation provision. *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (citation and alterations omitted). Silence or ambiguity as to the delegation of arbitrability is resolved in favor of court adjudication, in contrast to the general rule that ambiguities in arbitration agreements are resolved in favor of arbitration. *First Options*, 514 U.S. at 94-95.

When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. *Henry Schein*, *Inc. v. Archer & White Sales*, *Inc.*, --- U.S. ---, 139 S. Ct. 524, 526 (2019). In those circumstances, a court possesses no power to decide the arbitrability issue. *Id.* at 529. The only way to circumvent this rule is by showing that the agreement to delegate arbitrability is itself unconscionable. *Brennan*, 796 F.3d at 1132; *Diaz v. Nintendo of Am. Inc.*, No. C19-1116TSZ, 2020 WL

996859, at *1 (W.D. Wash. Mar. 2, 2020) (holding that only a challenge to the enforceability of the delegation provision itself, as opposed to the arbitration agreement as a whole, may be decided by the court).

Defendants contend that the MRPA contains a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator, in this case, JAMS. (Reply at 7; Mot. at 4.) Specifically, Defendants point to the portion of the MRPA that states:

> Subject to the terms of this Agreement, the Parties agree that the rules governing the arbitration will be the then-current Employment Arbitration Rules and Procedure of JAMS . . . .
>
> . . .
>
> Any dispute as to arbitrability, including disputes about this Program's enforceability, unconscionability, validity and applicability to a particular Covered Dispute must be resolved by the arbitrator in arbitration and not by the court.

(MRPA Section VII.) Ms. Briggs does not challenge the delegation provision specifically. (*See generally* Resp.)

Defendants' arguments are persuasive. The Ninth Circuit has held that an arbitration agreement "clearly and unmistakably" delegates the gateway issues of arbitrability to an arbitrator when it incorporates by reference the American Arbitration Association's rules of arbitration. *Brennan* 796 F.3d at 1130. And while it does not appear that the Ninth Circuit has explicitly held the same for references to JAMS rules, many courts have held as such. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, Case No. 2:21-cv-09978-ODW (JEMx), 2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) (determining that agreement's reference to JAMS rules delegated issue of arbitrability to the arbitrator); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283-84 (10th Cir. 2017)

(same); *O'Connor v. Warner Bros. Animation Inc.*, Case No. 2:20-cv-09291-MCS-JPR, 2021 WL 3598581, at *2 (C.D. Cal. Jan. 21, 2021) ("The agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability.").

The court concludes that the MRPA clearly and unmistakably delegates arbitrability questions to the arbitrator by incorporating the JAMS rules by reference. The only remaining question then is whether the particular agreement to delegate arbitrability—the MRPA's delegation provision—is itself unconscionable. *See Brennan*, 796 F.3d at 1133 (holding that where a party seeks to enforce a valid arbitration agreement containing a delegation provision, a federal court may only address unconscionability challenges pertaining to the specific delegation provision). Defendants point out that Ms. Briggs has "cite[d] no case law" nor "argued that the delegation [provision] itself is unconscionable." (Reply at 7.) The court agrees. Indeed, Ms. Briggs fails to raise the issue of delegation at all, much less argue, for example, that the delegation provision was hidden or vague or that it consists of overly technical legal language. (*See generally* Resp.) Ms. Briggs instead argues only that the MRPA itself is procedurally and substantively unconscionable. (*Id*. at 11-23.)

Because Ms. Briggs does not attack the delegation provision specifically, the task of assessing procedural or substantive unconscionability is not properly before the court and must be left to the arbitrator to decide, if at all. *See Brennan*, 796 F.3d at 1130.

**C. Defendants' Motion to Dismiss**

Defendants ask the court to dismiss this action without prejudice if it grants their motion to compel arbitration. (Mot. at 12-13.) Ms. Briggs did not address this argument. (*See generally* Resp.) The FAA directs courts to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Notwithstanding this language, the Ninth Circuit has held that a district court may either: (1) stay the action; or (2) if the court determines all claims raised in the action are subject to arbitration, dismiss the action. *Johnmohammadi v. Bloomingdale's*, *Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)).

The court concludes that the parties have delegated to the arbitrator the issue of whether the MRPA applies to Ms. Briggs's claims. (*See supra* § III.B.2.) Therefore, the court will stay the litigation pending the completion of arbitration so that Ms. Briggs has a forum in which to pursue her claims if the arbitrator decides that certain of her claims are not arbitrable. Accordingly, the court DENIES Defendants' motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to compel arbitration (Dkt. # 19); DENIES Defendants' motion to dismiss (Dkt. # 19); ORDERS the parties to proceed with arbitration in accordance with the terms of the MRPA; and DIRECTS the Clerk to stay this action. The court further ORDERS the parties to file a joint status report no more than 90 days from the date of this order and every 90 days thereafter until the court lifts the stay. The joint status reports shall inform the court of the status of Ms. Briggs's claims against Defendants. If Ms. Briggs's claims are resolved

or if there is any other significant change in the status of this matter at any time earlier than 90 days from the date of this order or any 90-day interval at which the parties must file a joint status report, the court ORDERS the parties to file a joint status report informing the court of the development no more than seven days after it occurs. The stay will remain in effect until the court orders otherwise.

Dated this 17th day of February, 2023.

JAMES L. ROBART
United States District Judge